# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JEREMY CAMPBELL, JR., )
)
    Plaintiff, ) No. 14-1458
)
v. )

CAROLYN W. COLVIN,
Commissioner of Social
Security,

    Defendant.

## OPINION AND ORDER

### SYNOPSIS

Plaintiff filed an application for supplemental social security income benefits, alleging disability due to reflux, headaches, obesity, and chronic cough, with an onset date of September 30, 2011. Plaintiff's application was denied initially, and upon hearing before an Administrative Law Judge ("ALJ"). The Appeals Council denied his request for review. Before the Court are the parties' cross-motions for summary judgment. For the following reasons, Plaintiff's Motion will be granted, and Defendant's denied. This matter will be remanded for further proceedings.

### OPINION

#### I. STANDARD OF REVIEW

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. §§ 405(g) 6 and 1383(c)(3)7. Section 405(g) permits a district court to review the transcripts and records upon which a determination of the Commissioner is based, and the court will review the record as a whole. See 5 U.S.C. §706. When reviewing a decision, the

1

district court's role is limited to determining whether the record contains substantial evidence to support an ALJ's findings of fact. Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate" to support a conclusion. Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)). If the ALJ's findings of fact are supported by substantial evidence, they are conclusive. 42 U.S.C. § 405(g); Richardson, 402 U.S. at 390.

A district court cannot conduct a de novo review of the Commissioner's decision, or re-weigh the evidence of record; the court can only judge the propriety of the decision with reference to the grounds invoked by the Commissioner when the decision was rendered. Palmer v. Apfel, 995 F.Supp. 549, 552 (E.D. Pa. 1998); S.E.C. v. Chenery Corp., 332 U.S. 194, 196 - 97, 67 S. Ct. 1575, 91 L. Ed. 1995 (1947). Otherwise stated, "I may not weigh the evidence or substitute my own conclusion for that of the ALJ. I must defer to the ALJ's evaluation of evidence, assessment of the credibility of witnesses, and reconciliation of conflicting expert opinions. If the ALJ's findings of fact are supported by substantial evidence, I am bound by those findings, even if I would have decided the factual inquiry differently." Brunson v. Astrue, 2011 U.S. Dist. LEXIS 55457 (E.D. Pa. Apr. 14, 2011) (citations omitted).

## II. PLAINTIFF'S MOTION

Plaintiff's records recount a largely unexplained and reportedly quite disruptive chronic cough, potentially resulting from a streptococcal infection, neurological condition, or a behavioral tic. Plaintiff's physicians believed that the cough had a neurogenic component. Moreover, apparently related to the cough, Plaintiff has suffered frequent vomiting, stomach pain, gastroesophageal reflux, dizzy spells, and headaches. At no point in the medical records,

including visits to a neurologist, a gastroenterologist, and the emergency room, did the lack of a firm diagnosis lead any medical provider to question the veracity of Plaintiff's complaints.

At the hearing, Plaintiff testified that he has thrown up three to five times daily for the last several years, resulting in 15-30 minutes until he is able to return to normal activities; lies down five to six times per day for 20 to 30 minutes to relieve nausea and vomiting; has dizzy spells every few minutes; and coughs every 15 to 20 seconds. He testified that he leaves the house once or twice per week, and does not visit friends or participate in activities. Plaintiff attended Thiel College, but left school as a result of his physical issues. The record reflects that coughing attacks caused Plaintiff to seek care in the emergency room on two separate occasions. One of Plaintiff's treating physicians found that he had erosive esophagitis. Another test found small airways obstruction. As one of Plaintiff's treating physicians stated, "this is an interesting and puzzling case."

The opinion evidence of record consists of two documents. The first came from a state agency non-examining source at the initial determination level, who opined that Plaintiff had several exertional limitation, such as on lifting/carrying and standing/walking; and several environmental limitations, including avoiding even moderate exposure to fumes, odors, dusts, gases, humidity, wetness, and extreme cold or heat. The second came from Dr. Matthews, Plaintiff's treating neurologist, who penned a brief letter indicating that Plaintiff's condition was probably permanent, and resulted in disability.

The ALJ determined that Plaintiff had a residual functional capacity ("RFC") of a full range of work at all exertional levels, with limitations of no balancing on heights, no work with the public, and no phone work with a lot of verbal communication. The ALJ proffered several explanations for the RFC: 1) a few months prior to the alleged onset date, Plaintiff reported, at a

routine physical, that his medication was working well for him, and the ALJ concluded that the evidence since the onset date did not reflect a worsening of his condition; 2) the ALJ gave little weight to Dr. Matthew's opinion that Plaintiff was disabled; and 3) he also gave little weight to the state agency medical consultant's opinion, solely because there were no objective findings to support the opinion. The ALJ, instead, found that the evidence supports only Plaintiff's complaints of chronic cough and occasional dizzy spells; he stated that the RFC accommodated those conditions. The ALJ also observed that the Plaintiff's conservative treatment history, as well as his activities of daily living – preparing simple meals, putting away laundry, shopping for groceries, and taking out the garbage – did not reflect the severity of symptoms that Plaintiff claimed.

Presently, Plaintiff contends that the ALJ dealt improperly with the opinion of Dr. Matthews; erred in concluding that Plaintiff's symptoms did not reappear following remission; and erred in judging Plaintiff's credibility. I have reviewed Plaintiff's contentions, but will remand on other grounds.[1]

"Rarely can a decision be made regarding a claimant's [RFC] without an assessment from a physician regarding the functional abilities of the claimant."
Gormont v. Astrue, 2013 U.S. Dist. LEXIS 31765, at *27 (M.D. Pa. 2013);

---

[1] The ALJ did not deal improperly with Dr. Matthews' statement of disability. It is beyond question that "a statement by a plaintiff's treating physician supporting an assertion that [he] is 'disabled' or 'unable to work' is not dispositive . . . ." Adorno v. Shalala, 40 F.3d 43, 47-48 (3d Cir. 1994). The ALJ explained this principle, and did not err in failing to accept Dr. Matthews' statement. I need not address Plaintiff's contentions regarding remission and credibility, because the ALJ will have the opportunity to fully reassess the record on remand. On remand, the ALJ should consider Plaintiff's credibility according to applicable standards, and do so in light of the principle that the ALJ should consider the extent to which subjective symptoms can reasonably be accepted as consistent with the objective medical evidence. See Ollie v. Comm'r of Soc. Sec., 2014 U.S. Dist. LEXIS 41169 (D.N.J. Mar. 26, 2014). The ALJ should also reassess the chronology of Plaintiff's remission and the recurrence of his symptoms, to ensure factual accuracy.

Godson v. Colvin, 2015 U.S. Dist. LEXIS 58100 (W.D. Pa. May 4, 2015). "Once the doctor has determined how long the claimant can sit, stand or walk, and how much weight the claimant can lift and carry, then the ALJ, with the aid of a vocational expert if necessary, can translate that medical determination into a residual functional capacity determination." Gormont, 2013 U.S. Dist. LEXIS 31765, at *27 (quoting Carolyn A. Kubitschek & Jon C. Dubin, Social Security Disability Law and Procedure in Federal Courts, 287-88 (2011)).

Here, there is no medical opinion of record supporting Plaintiff's functional ability to work. Accordingly, the ALJ did not rely on any medical opinion regarding that ability when formulating the RFC. It is unclear how the ALJ reached the conclusion, for example, that Plaintiff cannot work with the public, balance on heights, or do certain phone work; no physician opined as to these limitations. Of course, these may be seen as common sense limitations for a person with uncontrolled coughing or dizziness. There are, however, other, equally common-sense limitations – such as limiting exposure to fumes or dusts, which the state agency physician thought appropriate. I am unable to discern how the ALJ arrived at the limitations in the RFC, while choosing not to incorporate other limitations.

An ALJ must order a consultative examination where "such an examination is necessary to enable the ALJ to make the disability decision." Thompson v. Halter, 45 F.App'x 146, 149 (3d Cir. 2002). Here, the decision to reject both medical opinions of record triggered an obligation to further develop the record. Vanwhy v. Colvin, 2014 U.S. Dist. LEXIS 138997 (M.D. Pa. Sept. 30, 2014). On remand, the ALJ should further develop the record, which may include a consultative exam, regarding Plaintiff's physical capacity to perform work-related functions.

## CONCLUSION

In sum, remand is required so that the ALJ can obtain a consultative exam, and reassess Plaintiff's credibility and the medical record in light of such exam. An appropriate Order follows.

## ORDER

AND NOW, this 2nd day of June, 2015, it is hereby ORDERED, ADJUDGED, and DECREED that Plaintiff's Motion is GRANTED and Defendant's DENIED. This matter is remanded for further proceedings consistent with the foregoing Opinion.

BY THE COURT:

/s/Donetta W. Ambrose

Donetta W. Ambrose

Senior Judge, U.S. District Court